H. W. SHUMAN by E. M. SCOTT, his Guardian, v. SUPREME LODGE KNIGHTS OF HONOR, Defendant, and JOHN H. SHUMAN, Appellant.

**Evidence:** CHANGE OF BENEFICIARY: *Surrounding conditions.* In an action between the appointees of a decedent as beneficiaries of an insurance policy, a change as to such beneficiaries being made just prior to decedent's death, evidence as to the poor condition of plaintiff's health prior to his father's death, which was known to him, and the fact of his dependency for support on his labor, is admissible as showing the conditions when the certificate was transferred.

**FRAUD.** Where, in an action between the appointees of a decedent, as beneficiaries of an insurance policy, plaintiff charges that a change as to the beneficiaries was procured by fraud of persons who resided with decedent, evidence of decedent's wife that she had difficulty in seeing her husband, because of the hostility of those with whom he resided, is admissible on the issue of fraud.

**WITHDRAWAL OF ISSUE OF FRAUD.** Where the evidence in an action is insufficient to sustain a charge of fraud, the court may withdraw the issue from the jury.

**Transactions with Decedents:** *Assignee and beneficiary of insurance policy.* Code, section 4604, prohibiting the examination of any party to an action, as to transactions with a decedent, against the assignee, etc., of such decedent, does not preclude the examination of a party in an action against the appointee of a decedent as beneficiary of an insurance policy, as such appointee is not an assignee.

**PRIVILEGED COMMUNICATION:** *Physicians.* In an action between appointees of a decedent as beneficiaries of an insurance policy decedent's physician cannot be examined as to communications made by him as to his mental condition, since Code, section 4608 makes such communications privileged.

*Husband and wife.* Code, section 4607, providing that neither husband nor wife can testify as to communications between them while married, prohibits the wife testifying as to such communications in an action between the appointees of her deceased husband as beneficiaries of his insurance policy.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

THURSDAY, FEBRUARY 1, 1900.

PHILIP J. SHUMAN in the year 1881 took out a certificate of insurance in defendant association for the amount of two thousand dollars, payable jointly to his wife, Elizabeth, and his son, H. W. Shuman, the plaintiff. On April 29, 1896, the assured made a change of beneficiaries, and secured the issuance of a new certificate, payable to plaintiff alone. On May 27, 1897, which was the day prior to his death, Philip J. Shuman again made a change of beneficiaries, and procured a new certificate to be issued, payable to his brother, the defendant John H. Shuman. The petition alleges that when this last change was made the assured was very ill, and under the influence of drugs, and incapable of comprehending what he was doing; that the surrender of the old certificate, and the request for the issuance of a new one payable to his brother, were procured and induced by fraud. Judgment is prayed against defendant association. The association confessed liability to some person on the certificate, and paid the money into court. The case went to the jury only as against defendant John H. Shuman. There was a verdict and judgment for plaintiff, and said defendant appeals.—*Reversed.*

*Preston, Wheeler & Moffit* for appellant.

*Deacon & Good* for appellee.

WATERMAN, J.—Plaintiff was allowed, over defendant's objection, to detail a conversation had with his father about the insurance before the certificate was issued in defendant's favor. It is urged that this testimony was incompetent, under section 4604 of the Code, which prohibits the examination as a witness of any party to an action, or per-

son interested in the event thereof, in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased,. "against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person.  *  *  *" Three elements must exist in order to exclude this testimony under the section mentioned: (1) The matter must be in the nature of a personal transaction or communication; (2) the witness must be a party to the suit, or interested in the event thereof; (3) the action must be against the executor, administrator, assignee, etc.

1     There is no dispute but that the two first elements exist, but it is claimed on behalf of the appellee that the third is not to be found here. Is John H. Shuman an assignee of decedent? This is the question now presented for consideration. Philip J. Shuman had no present interest in the fund when the certificate was issued, on his request, to his brother. He had merely a power of appointment, which he executed; and John H. Shuman is his appointee, rather than his assignee. An assignment involves contractual relations. But the claim of a beneficiary is not based upon contract on his part. Niblack, Mutual Benefit Societies, section 149. This author states, in express terms, that the designation of a new beneficiary is not an assignment of the certificate (Id. section 173), and cites in his support *Highland v. Highland,* 109 Ill. 366. The case sustains the text. See, also, *Benevolent Society v. Fietsam,* 97 Ill 474. Section 7, chapter 65, Acts Twenty-first General Assembly, which prohibits the assignment of certificates like this, and provides that in case of a change of beneficiaries the consent of the association shall be first had, and a new certificate issued, has no special bearing on the question under discussion. It relates to the certificate, and not to the fund. The word "assignment," as used in that act, is equivalent to the word "indorsement." The evidence was properly admitted.

II.   Plaintiff was also permitted to introduce as a witness the physician who attended the decedent, and to examine him as to communications made by decedent in relation to his physical and mental condition. Section 4608 of the Code makes such communications privileged, and the death of the communicant is not in itself sufficient in all instances to remove the bar. The patient may waive this privilege; and in cases of contests of wills where the parties are claiming rights to the estate through devise, inheritance, or in a representative capacity, those representing the estate may also waive the privilege. *Denning v. Butcher,* 91 Iowa, 425-436; *Winters v. Winters,* 102 Iowa, 56. But the case at bar does not come within the rule of these decisions. While both claimants of the fund here are blood relations of Philip J. Shuman, they are neither of them asserting rights in that capacity. Each rests his right upon other grounds. Each claims to be, in effect, an appointee of decedent. There is no warrant for making such a case as this an exception to the rule of the statute. The testimony was improperly admitted. *Prader v. Association,* 95 Iowa, 149, has a bearing on this point.

III.   Next it is claimed there was error in permitting the widow of Philip J. Shuman to testify in plaintiff's behalf to communications made to her by her husband. Section 4607 of the Code (being the same as section 3642 of the Code of 1873) is as follows: "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted." Counsel for appellee cites the cases of *Pratt v. Delavan,* 17 Iowa, 307, and *Parcell v. McReynolds,* 71 Iowa, 623, as sustaining the trial court's ruling. In the first of these cases it affirmatively appears that the question here presented was not involved. In stating the facts in the opinion it is said that the wife

"was introduced by plaintiff to testify to a conversation had between the plaintiff and her husband while living." In *Parcell v. McReynolds* the nature of the wife's testimony is not disclosed. It is said, "She gave evidence tending to show that the plaintiff was entitled to recover." This is all that is shown. It might well have been of matters outside any communication from her husband. *Kelley v. Andrews,* 102 Iowa, 119, is more nearly in point, and its holding is against the ruling of the trial court. It is true, the marriage relation was still subsisting in that case when the testimony was given; but the statutory prohibition extends, in express terms, to cases where it has ceased to exist. The wife's testimony was erroneously admitted, though we may say that, on account of its comparatively immaterial character, we should perhaps not reverse on this ground alone.

IV.   Plaintiff's testimony as to the poor condition of his health for some time prior to his father's death,—the same being known to his father,—and the fact that he was dependent for support on his own labor, were admissible as showing the conditions existing at the time the certificate was transferred to defendant. So, also, the wife's testimony on this subject, and as to the difficulty she experienced in gaining access to her husband, because of the hostility of those with whom he was living, was admissible. The latter fact had some bearing on the issue of fraud, though it was insufficient alone to establish it. Of this we shall have something more to say under the next head.

V.   Defendant asked an instruction taking the issue of fraud from the jury. This should have been given. Without going into details, we may say there is not sufficient evidence to sustain the charge. All there is on this point is that to which we have just referred. There was evidence outside the testimony of the physicians which tended to show the mental unsoundness of Philip J.

Shuman at the time the certificate was transferred. This issue was for the jury, and the instructions given cover this branch of the case with substantial accuracy.

Some errors complained of are of an immaterial nature, and still others are not likely to again arise. For the errors mentioned, the judgment is REVERSED.

GRANGER, C. J., not sitting.