IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JANUARY SESSION, 1998

FILED

July 29, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9705-CR-00092** |
| Appellee, | ) | |
| | ) | |
| | ) | **JACKSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J.O. BOND** |
| **ROBERT FARLEY,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Simple Assault)** |

FOR THE APPELLANT:

STEVEN A. CASSETTY
P. O. Box 815
204B East Hull Avenue
Gainesboro, TN  38562

EDWIN SADLER
One S. Jefferson Avenue, Suite 1
Cookeville, TN  38501

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DARYL J. BRAND
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

TOM P. THOMPSON, JR.
District Attorney General

ROBERT HIBBETT
Assistant District Attorney
Lebanon, TN

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# <u>OPINION</u>

On April 19, 1996, a Jackson County jury found Appellant, Robert Farley, guilty of two counts of simple assault, upon an indictment charging him with aggravated rape, aggravated assault by use of a deadly weapon, and aggravated assault by causing serious bodily injury. After a sentencing hearing, the trial court sentenced Appellant to eleven months and twenty-nine days, ninety days of which was to be served in jail and the remaining time to be served on supervised probation. Appellant appeals both the judgment and the sentence, raising several issues:

   1) whether the State presented sufficient evidence at trial to sustain the convictions on two counts of simple assault;
   2) whether the trial court erroneously prevented Appellant from presenting an alibi defense; and
   3) whether the trial court appropriately sentenced Appellant to ninety days in jail followed by probation.

After a review of the record, we affirm the judgment of the trial court.

**FACTS**

According to testimony presented at trial, Sharon Raymer and Robert Farley had an intimate relationship from about February 1994 until July 1994. They lived together in her trailer in Jackson County until approximately July 1994 after which they had a "on again, off again" relationship. Ms. Raymer stated that by March of 1995, Mr. Farley was just bothering her when he came by her house, and she did not want him to visit her.

Ms. Raymer testified that on the night of March 25, 1995, Mr. Farley came to her trailer, drunk. He accused her of having affairs with several men in the neighborhood. Then he, "threw me on the ground and put his boot on my throat and kicked me in the head. After that he tore my clothes off and raped and sodomized me." According to Ms. Raymer's testimony, Mr. Farley had a gun in a holster, which he indicated he had brought with him in order to kill her. After raping her, Mr. Farley left.

Ms. Raymer stated that she did not leave her trailer at all the following day out of fear that Mr. Farley would kill her. She stated that he had threatened to kill her if she told anyone of the preceding night's events. A neighbor, Barbara McAvoy, stopped by to visit, and Ms. Raymer only admitted her into the trailer after extracting a promise that she would not call the police. Ms. McAvoy described that Ms. Raymer "had been beat up or bruised, or looked that she'd been beat up, bad."

Ms. Raymer testified that late on the night of March 26, Mr. Farley again came to her house. He damaged a sliding glass door to the trailer, and then went to the front door and broke through that door. Mr. Farley dragged Ms. Raymer from bed by the hair, pulled her arms, slapping, kicking and punching her. According to Ms. Raymer, after beating her, he again tore off her clothes and raped and sodomized her.

Ms. Raymer further testified that on the afternoon of March 27, Mr. Farley returned to her residence a third time. Ms. Raymer admitted that she had drunk a number of beers that afternoon, so that when he hurt her again she would not

feel anything. According to Ms. Raymer, Mr. Farley again accused her of being with other men, beat her, ripped her clothes off and "had his way" with her, raping and sodomizing her. She also stated that he was armed, and that he patted the gun and said, "don't forget I got this."

Ms. Raymer stated that after the assault, Mr. Farley went across the street to Tommy Mansell's house. He returned, bleeding from a stab wound. Ms. Raymer ran across the street and asked Mr. Callahan, a neighbor, to call an ambulance.

Kenneth Bean, an officer at the Jackson county Sheriff's Department, went to the scene of the stabbing on March 27, 1995. He found Mr. Farley at Mr. Callahan's house, bleeding from a wound in his arm. Officer Bean learned that Mr. Farley had possessed a gun, and searched for the gun, checking the site of the stabbing and following a trail of Mr. Farley's blood back to Ms. Raymer's trailer. The gun was never found. Officer Bean observed Ms. Raymer at her house and noted that she appeared to be intoxicated or on medication. He further observed that she appeared to have several bruises and scratches. Ms. Raymer began to have seizures and an ambulance was called.

A registered nurse from Jackson County Hospital testified that he treated Ms. Raymer when she arrived at the hospital on March 27. He had treated her for seizures on two or three other occasions. The nurse noted that Ms. Raymer suffered bruising on her arms and face and had an open wound on her face. She also had "one fairly large bruise noted to the right lateral hip, just above the belt." He opined that, judging from the coloration of the bruises, some were two to three

days old, while others were more recent. The nurse testified that on the previous occasions when he had treated Ms. Raymer for seizures she had not had such injuries.

Donna Wisehart testified that she was a good friend of Mr. Farley's and remembered that he was with her at her work until pretty late in the evening of March the 27th. The defense was prevented from developing her testimony by a ruling of the trial court excluding alibi testimony. The trial court stated on the record that attorneys in his court did not follow the Rules of Criminal Procedure, "I know what the notice says, and in this district you've always said you've got open files with the district attorney and that the formal rules didn't apply in this district. Now, if you all want to go back to the formal rules and want to practice under the formal rules, then we'll do that." The trial court stated that he refused to admit testimony regarding where Appellant was on the nights of the alleged incidents as alibi, because the defense counsel had not provided the State with notice that it intended to rely upon an alibi, stating that the State did not have to request notice of such an intent.

## I. Sufficiency of the Evidence

Appellant contends that the evidence introduced at trial was insufficient to convict Appellant of assault, arguing that the jury obviously did not accredit the testimony of the alleged victim and other than her testimony there is no evidence placing him at the scene of the incident. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge

according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (*citing* State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Mathews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, the Tennessee Rules of Appellate Procedure, Rule 13(e) provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." *See also* State v. Mathews, 805 S.W.2d at 780.

In the matter <u>sub judice</u>, the jury convicted Appellant of simple assault, crediting the victim's testimony to some degree. The fact that the jury apparently did not credit her testimony regarding the rape does not entitle this Court to invade the province of the jury in making these distinctions. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as triers of fact. <u>State v. Sheffield</u>, 676 S.W.2d 542 (Tenn. 1984); <u>Byrge v. State</u>, 575 S.W.2d 292 (Tenn. Crim. App. 1978). There is no requirement in Tennessee that jury verdicts be consistent. <u>State v. Denson</u>, 710 S.W.2d 524 (Tenn. Crim. App. 1985) (*citing* <u>Wiggins v. State</u>, 498 S.W.2d 92, 93 (Tenn. 1973)). It was entirely proper for the jury to exonerate Appellant as to the rape charges and yet credit the victim's testimony regarding the assault. This issue is without merit.

## II. Notice of Alibi

Appellant argues that the trial court improperly refused to allow alibi testimony and misapplied Tennessee Rules of Criminal Procedure Rule 12.1 when it enforced an unwritten local custom of requiring the defense to give the State notice of intent to use an alibi even without a demand by the district attorney. We agree. When Appellant attempted to elicit testimony from defense witness Donna Wisehart regarding Appellant's whereabouts the night of the alleged crime, the trial court, sua sponte, interrupted the questioning to ask whether the defense had filed a notice of alibi. The defense counsel asked if the matter could be discussed outside the presence of the jury, a request the trial court denied. The trial judge stated in the presence of the jury that he would admit the evidence, "except I'm not going to let it in for alibi." After the witnesses' testimony the defense attempted to create a record as to what the rule of

procedure regarding alibi provides. Defense counsel said, "Your honor, now we would at this time request again, if I could for the record, You honor-" The trial court again interrupted, berating the defense counsel for his reliance on the Rules of Criminal Procedure. The diatribe culminated with defense counsel attempting to point out that the rule specifies that notice need be given only upon written request and the trial court interrupting "No, sir, You hush. Hush. Now, we're not going to get into that. I've ruled, and if it's in error, they'll reverse it. But if I'm not in error, they'll let it go."

Tennessee Rules of Criminal Procedure, Rule 12.1 states:

> Upon written demand of the district attorney general stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney general a written notice of an intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

The rule further provides for the State to disclose, within ten days of receiving the defense notice, the names and addresses of the witnesses upon whom the State intends to rely to establish the defendant's presence at the scene and any witnesses upon whom the State will rely to rebut the defendant's alibi. Tenn. R. Crim. P. 12.1(b).

Tenn. R. Crim. P. 12.1(e) allows the trial court, for good cause shown, to grant an exception to any of the requirements of Rule 12.1. However, here it

appears that the trial court was attempting to enforce an unwritten local custom of wide open discovery on the part of all parties in a criminal case rather than relying on Rule 12.1(e). Indeed, the State in this appeal does not contest the erroneous nature of the trial court's ruling, but argues that the error was harmless.

We agree that the error was, in fact, harmless. Appellant stated on the record he wished to show only that for part of the time Ms. Raymer claimed he assaulted her, Appellant was elsewhere. He was able to present this evidence to the jury. Further, Appellant argued in his closing argument that the proof showed that Appellant was elsewhere for part of the time the offenses were alleged to have occurred and would not have had time to commit them as Ms. Raymer alleged. Finally, nothing in this record or Appellant's brief alleges that he had other evidence of alibi he was prevented from presenting to the jury. Under these circumstances we find the trial court's ruling to be harmless and that reversal is not required. Tenn. R. App. P. 36(b).

**III. Sentencing**

Appellant also contends that the trial court erred in sentencing him for a period of confinement in excess of the minimum time within the applicable range. When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record

that the trial court considered the sentencing principles and all the relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Sentencing Reform Act of 1989 established specific procedures which must be followed in sentencing. These procedures, codified at Tennessee Code Annotated § 40-35-210, mandated the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristic of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

Tenn. Code Ann. § 40-35-210.

Unlike felony sentences, a misdemeanor sentence does not carry with it the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In determining the portion of the sentence to be served in confinement, the trial court must consider the enhancement and mitigating factors, as well as the other purposes and principles of the Sentencing Reform Act. Id. at 833. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Reform Act also provides that the trial court shall place on the record either orally or in writing what enhancement or mitigating factors, if

any, it found. These findings are crucial for review of the trial court's decision upon appeal.

In the matter sub judice, Appellant was convicted on two counts of simple assault, a Class A misdemeanor. Tenn. Code Ann. 39-13-101(b). Appellant was sentenced to an 11 month and 29 day sentence, but the trial court ordered that all but 90 days of the sentence be served on probation. The record of the sentencing hearing demonstrates that the trial court observed the sentencing principles and the factors and circumstances listed in Tennessee Code Annotated § 40-35-210(b), accordingly we review the trial court's sentence with a presumption of correctness. In light of the number of enhancement factors the trial court found, including Appellant's prior history of 12 misdemeanor convictions, we find that the trial court properly imposed a sentence of 11 months and 29 days. This issue is without merit.

Therefore, for the reasons stated above, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
DAVID H. WELLES, JUDGE